Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Tara A. Currie (SBN 323984)
tcurrie@blakelylawgroup.com
BLAKELY LAW GROUP
1108 Manhattan Ave, Unit B
Manhattan Beach, CA 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

**Attorneys for Plaintiffs**
*Tapestry, Inc., Coach Services, Inc., and Coach IP Holdings LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAPESTRY, INC., a Maryland Corporation; COACH SERVICES, INC, a Maryland Corporation; and COACH IP HOLDINGS LLC, a Delaware Limited Liability Company<br><br>Plaintiffs,<br><br>v.<br><br>LAST BRAND, INC. dba QUINCE, a Delaware Corporation; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO.: 3:25-cv-03082<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF:**<br><br>1. **FEDERAL TRADE DRESS INFRINGEMENT (Claims 1-2)**<br><br>2. **TRADE DRESS INFRINGEMENT UNDER CALIFORNIA COMMON LAW (Claim 3)**<br><br>3. **UNFAIR COMPETITION CALIFORNIA UNFAIR BUSINESS PRACTICES ACT, CAL. BUS. & PROF. CODE, § 17200, *ET SEQ*. (Claim 4)**<br><br>4. **UNFAIR COMPETITION UNDER CALIFORNIA COMMON LAW (Claim 5)**<br><br>**[JURY TRIAL DEMANDED]** |

Plaintiffs Tapestry, Inc., Coach Services, Inc., and Coach IP Holdings LLC (collectively, "Plaintiffs" or "Coach") through their undersigned counsel, for their claims against Defendant Last Brand, Inc. dba Quince ("Quince") and DOES 1-10 (collectively "Defendants") respectfully allege as follows:

## NATURE OF THE ACTION

1. This is an action for trademark counterfeiting, trademark infringement, trade dress infringement, and unfair competition under the Lanham Trademark Act of 1946, 15 U.S.C. §1051 et seq. (the "Lanham Act"), and for related claims of trademark infringement and unfair competition under the statutory and common law of the state of California.

## JURISDICTION AND VENUE

2. Jurisdiction over the parties and subject matter of this action is proper in this Court pursuant to 15 U.S.C. §§ 1121, 1331, and 1338(a). This Court has supplemental jurisdiction over the claims in this Complaint that arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a).

3. This Court has personal jurisdiction over Defendants because Defendants conduct continuous and systematic business in this district, placed infringing products in the stream of commerce directed to residents of this district, derived commercial benefits from the sale of infringing products and caused injuries to Plaintiff within the Northern District of California.

4. Venue is proper under 28 U.S.C. §§ 1391(b)-(c) because a substantial part of the events or omissions giving rise to the claims alleged occurred in this judicial district and Plaintiff is located and has been injured in this judicial district, and 28 U.S.C. § 1400(b) because Defendants committed acts of infringement in this judicial district.

## THE PARTIES

5. Plaintiff Tapestry, Inc. is a corporation duly organized and existing under the laws of the state of Maryland, with its principal place of business in New York,

New York.

6. Plaintiff Coach Services, Inc. is a corporation duly organized and existing under the laws of the state of Maryland with its principal place of business in Jacksonville, Florida. Coach Services, Inc. is a wholly owned subsidiary of Tapestry, Inc.

7. Plaintiff Coach IP Holdings LLC is a limited liability company duly organized and existing under the laws of the state of Delaware with its principal place of business in New York, New York. Coach IP Holdings LLC is a wholly owned subsidiary of Tapestry, Inc.

8. Upon information and belief, Quince is a corporation organized and existing under the laws of the state of Delaware and a registered foreign entity doing business in the state of California (4254361) with an office and principal place of business located at 735 Market Street, San Francisco, California 94103

9. Plaintiffs Tapestry, Inc., Coach Services, Inc., and Coach IP Holdings LLC (hereinafter collectively, "Plaintiffs" or "Coach") are unaware of the names and true capacities of Defendants, whether individual, corporate and/or partnership entities, named herein as DOES 1 through 10, inclusive, and therefore sue them by their fictitious names.  Plaintiffs will seek leave to amend this complaint when their true names and capacities are ascertained.  Plaintiffs are informed and believe and based thereon allege that said Defendants and DOES 1 through 10, inclusive, are in some manner responsible for the wrongs alleged herein, and that at all times referenced each was the agent and servant of the other Defendants and was acting within the course and scope of said agency and employment.

10. Plaintiffs are informed and believe, and based thereon allege, that at all relevant times herein, Defendants knew or reasonably should have known of the acts and behavior alleged herein and the damages caused thereby, and by their inaction ratified and encouraged such acts and behavior.  Plaintiffs further allege that

Defendants have a non-delegable duty to prevent and/or remedy such acts and the behavior described herein, which duty Defendants failed and/or refused to perform.

### ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**A.    The World-Famous Coach Brand and Products**

11.    Coach was founded in 1941 as a family-run workshop in Manhattan, New York.  Since then, Coach has been engaged in the manufacture, marketing and sale of fine leather and mixed material products, including, but not limited to, handbags, wallets, accessories, eyewear, footwear, clothing, outerwear, jewelry, and watches (collectively, the "Coach Products").  Coach Products are sold throughout the United States, including in California, through Coach retail and outlet stores, through various department stores, and on the Internet at www.coach.com and www.coachoutlet.com.

12.    Coach Products have become enormously popular and even iconic, driven by the brand's arduous quality standards and innovative designs.  Among the purchasing public, genuine Coach Products are instantly recognizable as such.

13.    Both in the United States and internationally, the Coach brand symbolizes high quality, and Coach Products are among the most recognizable handbags and accessories in the world.  Whether made entirely of leather or in combination with printed or other components, genuine Coach Products are greatly coveted as premier fashion accessories of the highest quality.

14.    The unique mix of function, workmanship, fashion, and style that goes into each and every genuine Coach Product, as well as the brand's exclusive cachet, results in Coach Products commanding a relatively high price at retail.  The brand's loyal customer base willingly pays more for genuine Coach Products than they would pay for lesser products because Coach Products are of higher quality and durability than competitors' products and because of the prestige associated with genuine Coach Products.

**B.    Defendants' Acts of Infringement and Unfair Competition**

15.    The present lawsuit arises from Defendants' design, manufacture,

importation, distribution, advertisement, marketing, offering for sale, and sale of handbag products bearing marks identical, substantially indistinguishable, or confusingly similar to Coach's "Rogue Trade Dress" and "Soho Flap Trade Dress" (hereinafter referred to as the "Accused Products"), exemplars of which are shown below in comparison to genuine Coach products:




*Accused Product*
*(Quince Italian Leather Medium Convertible Satchel)*

*Coach Rogue Bag*




*Accused Product*
*(Italian Leather Buckle Detail Shoulder Bag)*

*Coach Soho Flap Bag*

16. Upon information and belief, Quince is engaged in the retail sale of a wide range of handbags and other products under its Quince® brand through its website (www.quince.com) that is accessible to customers nationwide, including to those within this judicial district.

17. Upon information and belief, Defendants imported into the U.S., advertised, marketed, offered for sale, and/or sold at least the Accused Products identified by name as Quince® brand "Italian Leather Medium Convertible Satchel" and "Italian Leather Buckle Detail Shoulder Bag" through its website (quince.com) to consumers nationwide, including consumers within this judicial district.

18. Upon information and belief, Quince is a competitor of Coach and introduced the Accused Products into the stream of commerce to exploit Coach's goodwill and the reputation of the Coach® Rogue and Soho Flap Bags.

19. Coach has not granted Defendants a license to practice nor given Defendants any form of permission to use Coach's trademarks, trade dresses, or any other intellectual property, including the Rogue Trade Dress and the Soho Flap Trade Dress.

20. Upon information and belief, Defendants may have sold additional products that infringe upon Coach's intellectual.  Defendants will seek leave to amend as additional information becomes available through discovery.

21. Defendants have been engaging in the above-described illegal and infringing activities negligently and/or knowingly and intentionally, with reckless disregard or willful blindness to Plaintiffs' rights, and/or with bad faith, for the purpose of trading on the goodwill and reputation of the Rogue Trade Dress, Soho Flap Trad Dress, and Plaintiffs' products.

22. Defendants' activities, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between the Defendants, the Accused Products, and Coach.

23. Upon information and belief, Defendants intend to continue to design,

manufacture, advertise, promote, import, distribute, sell, and/or offer for sale the Accused Products.

24. As a result of Defendants' activities Plaintiffs have suffered substantial damages and have suffered and continue to suffer irreparable injury without an adequate remedy at law.

## FIRST CLAIM FOR RELIEF

**(Trademark Dress Infringement of the Rogue Trade Dress – 15 U.S.C. § 1125(a))**

25. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as though fully set forth herein.

26. In 2016, Coach introduced the Rogue bag, marketed and featuring the design elements protected under the "Rogue Trade Dress." The Rogue Trade Dress is unique and inherently distinctive, and comprised of the following non-functional elements:

   a. Two small, rigid, tubular handles at the top center of the bag;
   b. Two circular metal rivets in a vertical formation underneath each end of the top handles of the bag, appearing on the front and back sides of the bag;
   c. Three stitching lines on the upper left and right corners of the bag, appearing on the front and back sides of the bag;
   d. A circular hook at each inside corner of the bag near the top;
   e. Two detachable shoulder straps;
   f. One detachable crossbody strap;
   g. A middle zippered compartment;
   h. Two open compartments; and
   i. Four circular, raised metal rivets at the bottom of the bag.

27. The Rogue Trade Dress, which is a composite of the above-referenced features, is non-functional in its entirety, visually distinctive, and unique in the

handbag industry; examples of its distinctive appearance as a whole are shown in the photographs below:






28. The design of the Rogue Trade Dress is neither essential to its use or purpose, nor does it affect the cost or quality of the handbag. There are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the Rogue Trade Dress. The combination of features comprising the Rogue Trade Dress provides no cost advantages to the manufacturer or utilitarian advantages to the consumer. These features, in combination, serve only to

render the Rogue Bag, the embodiment of the Rogue Trade Dress, as a distinct product originating solely from Coach.

29.   The Coach Rogue Bag, the embodiment of the Rogue Trade Dress, is one of Coach's signature styles, having been called "cult status" and "iconic forever" by the press.  The Rogue Bag has been featured in many of Coach's advertising and promotional materials as well as in various trade publications.  Various celebrities can also be seen wearing the Rogue Bag just as regular consumers can also be seen wearing and praising the Rogue Bag on the internet and social media.

30.   Coach has spent substantial time, effort, and money in designing, developing, advertising, promoting, and marketing the Coach brand and its line of products embodying the Rogue Trade Dress.  Coach spends millions of dollars annually on advertising Coach Products, including handbags embodying the Rogue Trade Dress.  As a result of Coach's advertising efforts and its popularity with consumers, The Rogue Bag has generated approximately hundreds of millions in sales since its launch in 2016.

31.   Due to its long use, extensive sales, and significant advertising and promotional activities, the Rogue Trade Dress has achieved widespread acceptance and recognition among the consuming public and trade throughout the United States. Moreover, the Rogue Trade Dress has achieved a high degree of consumer recognition and secondary meaning, which serves to identify Coach as the exclusive source of handbags featuring the Rogue Trade Dress.

32.   Upon information and belief, Defendants are competitors of Coach and Defendants introduced Accused Products into the stream of commerce to exploit Coach's goodwill and the reputation of the Rogue Bag.

33.   The Accused Products manufactured, imported, distributed, advertised, offered for sale, and/or sold by Defendants bear confusingly similar reproductions of the Rogue Trade Dress, such as to cause a likelihood of confusion as to the source, sponsorship or approval by Coach of the Accused Products.

9

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

34. Defendants' use of the Rogue Trade Dress is without Coach's permission or authorization, and in total disregard of Coach's rights to control its intellectual property. There are numerous other handbag designs in the handbag industry, none of which necessitate copying or imitating the Rogue Trade Dress.

35. Defendants' use of the Rogue Trade Dress is likely to lead to and result in confusion, mistake, or deception, and is likely to cause the public to believe that Accused Products are produced, sponsored, authorized, or licensed by or are otherwise connected or affiliated with Coach.

36. As a direct and proximate result of the foregoing acts, Coach has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Coach is entitled to recover all damages, including attorneys' fees, that it has sustained and will sustain, and all gains, profits and advantages obtained by Defendants as a result of its infringing acts.

37. Furthermore, unless Defendants' unlawful acts are enjoined by this Court, there is no adequate remedy at law that can fully compensate Coach for the harm caused by Defendants' infringement, which is ongoing. Accordingly, Coach is entitled to injunctive relief prohibiting Defendants from continuing to infringe the Rogue Trade Dress, or any designs confusingly similar thereto.

## SECOND CLAIM FOR RELIEF

**(Trademark Dress Infringement of the Soho Flap Trade Dress – 15 U.S.C. § 1125(a))**

38. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as though fully set forth herein.

39. In 2006, Coach introduced the Soho Flap Bag, marketed and featuring the design elements protected under the "Soho Flap Trade Dress." The Soho Flap Trade Dress is unique and inherently distinctive, and comprised of the following non-functional elements:

   a. A flap on the front of the bag;

     b. A wide belt-like buckle centered on the front flap featuring a "keeper" for the belt end;

     c. A shoulder strap;

     d. A handbag with a wide U-shaped silhouette;

     e. Triangular-shaped stitching on the bottom left and right corners of the bag; and

     f. A diagonal line stitch on the bottom left and right corners of the bag.

40. The Soho Flap Trade Dress, which is a composite of the above-referenced features, is non-functional in its entirety, visually distinctive, and unique in the handbag industry; examples of its distinctive appearance as a whole are shown in the photographs below:

  

41. The design of the Soho Flap Trade Dress is neither essential to its use or purpose, nor does it affect the cost or quality of the handbag. There are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the Soho Flap Trade Dress. The combination of features comprising the Soho Flap Trade Dress provides no cost advantages to the manufacturer or utilitarian advantages to the consumer. These features, in

combination, serve only to render the Soho Flap Bag, the embodiment of the Soho Flap Trade Dress, as a distinct product originating solely from Coach.

42. The Coach Soho Flap Bag, the embodiment of the Soho Flap Trade Dress, is one of Coach's most iconic and signature styles. The Soho Flap Bag has been featured in many of Coach's advertising and promotional materials as well as in various trade publications. Various celebrities can also be seen wearing the Soho Flap Bag just as regular consumers can also be seen wearing and praising the Soho Flap Bag on the internet and social media.

43. Coach has spent substantial time, effort, and money in designing, developing, advertising, promoting, and marketing the Coach brand and its line of products embodying the Soho Flap Trade Dress. Coach spends millions of dollars annually on advertising Coach Products, including handbags embodying the Soho Flap Trade Dress. As a result of Coach's advertising efforts and its popularity with consumers, the Soho Flap Bag has generated approximately millions in sales in the past 9 years.

44. Due to its long use, extensive sales, and significant advertising and promotional activities, the Soho Flap Trade Dress has achieved widespread acceptance and recognition among the consuming public and trade throughout the United States. Moreover, the Soho Flap Trade Dress has achieved a high degree of consumer recognition and secondary meaning, which serves to identify Coach as the exclusive source of handbags featuring the Soho Flap Trade Dress.

45. Upon information and belief, Defendants are competitors of Coach and Defendants introduced Accused Products into the stream of commerce in an effort to exploit Coach's goodwill and the reputation of the Soho Flap Bag.

46. The Accused Products manufactured, imported, distributed, advertised, offered for sale, and/or sold by Defendants bear confusingly similar reproductions of the Soho Flap Trade Dress, such as to cause a likelihood of confusion as to the source, sponsorship or approval by Coach of the Accused Products.

47. Defendants' use of the Soho Flap Trade Dress is without Coach's permission or authorization, and in total disregard of Coach's rights to control its intellectual property. There are numerous other handbag designs in the handbag industry, none of which necessitate copying or imitating the Soho Flap Trade Dress.

48. Defendants' use of the Soho Flap Trade Dress is likely to lead to and result in confusion, mistake, or deception, and is likely to cause the public to believe that Accused Products are produced, sponsored, authorized, or licensed by or are otherwise connected or affiliated with Coach.

49. As a direct and proximate result of the foregoing acts, Coach has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Coach is entitled to recover all damages, including attorneys' fees, that it has sustained and will sustain, and all gains, profits and advantages obtained by Defendants as a result of its infringing acts.

50. Furthermore, unless Defendants' unlawful acts are enjoined by this Court, there is no adequate remedy at law that can fully compensate Coach for the harm caused by Defendants' infringement, which is ongoing. Accordingly, Coach is entitled to injunctive relief prohibiting Defendants from continuing to infringe the Soho Flap Trade Dress, or any designs confusingly similar thereto

### THIRD CLAIM FOR RELIEF
### (Trademark Infringement under California Common Law)

51. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as though fully set forth herein.

52. Defendants' infringement of the Rogue Trade Dress and Soho Flap Trade Dress also constitutes trade dress infringement under common law of the state of California.

53. The Accused Products manufactured, imported, distributed, advertised, offered for sale, and/or sold by Defendants bear confusingly similar reproductions of the Rogue Trade Dress and Soho Flap Trade Dress such as to cause a likelihood of

confusion as to the source, sponsorship, or approval by Coach of the Accused Products.

54.  Defendants' unauthorized use of the Rogue Trade Dress and Soho Flap Trade Dress has caused and is likely to cause confusion as to the source of Accused Products among consumers.

55.   As a direct and proximate result of the foregoing acts, Coach has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Coach is entitled to recover all damages, including attorneys' fees, that it has sustained on account of Defendants' infringement, and all gains, profits and advantages obtained by Defendants because of its unlawful acts.

56.  Defendants' unlawful acts were willful, deliberate, and intended to cause confusion among the public, taken in reckless disregard of Coach's rights.  As such, an award of exemplary and punitive damages is necessary in an amount sufficient to deter similar misconduct in the future.

57.  Furthermore, unless Defendants' unlawful acts are enjoined by this Court, there is no adequate remedy at law that can fully compensate Coach for the damages caused by Defendants' infringement, which is ongoing. Accordingly, Coach is entitled to injunctive relief prohibiting Defendants from continuing to infringe the Rogue Trade Dress or Soho Flap Trade Dress, or any designs confusingly similar thereto

## FOURTH CLAIM FOR RELIEF

**(Unfair Competition Under California Unfair Business Practices Act, Cal. Bus. & Prof. Code, § 17200 et seq.)**

58.  Plaintiffs repeat and reallege the allegations of the preceding paragraphs as though fully set forth herein.

59.  Defendants' appropriation, adoption and use of the Rogue Trade Dress and Soho Flap Trade Dress in connection with the sale and offering for sale of goods is likely to confuse or mislead consumers into believing that Defendants' goods are authorized, licensed, affiliated, sponsored, and/or approved by Plaintiffs, thus

constituting a violation of the California Unfair Business Practices Act, Cal. Bus. & Prof. Code, § 17200, *et. seq.* ("UCL").

60. Upon information and belief, Defendants' deceptive, unfair, and fraudulent business practices were willfully undertaken with full knowledge of Plaintiffs' rights in the Rogue Trade Dress and Soho Flap Trade Dress and with the intent to misappropriate Plaintiffs' goodwill and reputation established in the said trade dresses.

61. Defendants' conduct is unfair within the meaning of the UCL because it allows Defendants to benefit unjustly by virtue of the goodwill and positive reputation that members of the public associate with Coach and its products. As described herein, and on information and belief, Defendants have intentionally violated, and continues to violate, Plaintiffs' rights in the Rogue Trade Dress and Soho Flap Trade Dress to enjoy the commercial benefits derived therefrom.

62. Defendants' conduct is fraudulent in violation of the UCL because Defendants are willfully and deliberately misleading the public by using in commerce confusingly similar reproductions of the Rogue Trade Dress and Soho Flap Trade Dress.

63. This conduct is likely to confuse the public as to whether Defendants' products are somehow associated, affiliated, or connected with Coach, or vice versa.

64. As a direct and proximate result of the foregoing acts, Coach has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Coach is entitled to all available relief provided for under the UCL, including an accounting and disgorgement of all illicit profits that Defendants made on account of its deceptive, unfair, and fraudulent business practices. Furthermore, because Coach has no adequate remedy at law for Defendants' ongoing unlawful conduct, Coach is entitled to injunctive relief prohibiting Defendants from unfair competition.

**FIFTH CLAIM FOR RELIEF**
**(Unfair Competition Under California Common Law)**

65. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as though fully set forth herein.

66. Defendants' misappropriation and unauthorized use of the Rogue Trade Dress and Soho Flap Trade Dress to promote the Accused Products also constitutes unfair competition in violation of common law of the state of California.

67. Defendants' unlawful acts in appropriating rights in the Rogue Trade Dress and Soho Flap Trade Dress was intended to capitalize on Coach's goodwill for Defendants' own pecuniary gains. Coach has expended substantial time, resources and effort to obtain an excellent reputation for itself and the Rogue Trade Dress and Soho Flap Trade Dress. As a result of Coach's efforts, Defendants are now unjustly enriched and benefiting from property rights that rightfully belong to Plaintiffs.

68. Defendants' unauthorized use of the Rogue Trade Dress and Soho Flap Trade Dress has caused and is likely to cause confusion as to the source of Defendants' products, all to the detriment of Plaintiffs.

69. Defendants' acts are willful, deliberate, and intended to confuse the public and to injure Plaintiffs.

70. Defendants' acts constitute unfair competition in violation of the common law of the state of California.

71. Plaintiffs have been irreparably harmed and will continue to be irreparably harmed because of Defendants' unlawful acts unless Defendants are permanently enjoined from its unlawful conduct.

72. The conduct herein complained of was extreme, outrageous, fraudulent, and was inflicted on Plaintiffs in reckless disregard of Plaintiffs' rights in the Rogue Trade Dress and Soho Flap Trade Dress. Said conduct was despicable and harmful to Plaintiffs and as such supports an award of exemplary and punitive damages in an amount sufficient to punish and make an example of the Defendants and to deter Defendants from similar such conduct in the future.

73. Plaintiffs have no adequate remedy at law.

74. In light of the foregoing, Plaintiffs are entitled to injunctive relief prohibiting Defendants from using the Rogue Trade Dress and Soho Flap Trade Dress, or products confusingly similar thereto, and to recover all damages, including attorneys' fees, that Plaintiffs have sustained and will sustain, and all gains, profits and advantages obtained by Defendants as a result of its infringing acts alleged above in an amount not yet known, and the costs of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Tapestry, Inc., Coach Services, Inc., and Coach IP Holdings LLC respectfully request that this Court enter judgment in their favor and against Quince and DOES 1-10 as follows:

75. Finding that:

    a. Defendants have engaged in federal trade dress infringement for its infringement of the Rogue Trade Dress and Soho Flap Trade Dress;

    b. Defendants have engaged in trademark dress infringement and unfair competition under the common law of the state of California;

    c. Defendants have engaged in unfair competition in violation of the California Unfair Business Practices Act, Cal. Bus. & Prof. Code, § 17200, et. seq.; and

76. An order granting temporary, preliminary, and permanent injunctive relief restraining and enjoining Defendants, its agents, servants, employees, officers, associates, attorneys, and all persons acting by, through, or in concert with any of them from infringing Coach's intellectual property at issue, including, but not limited to:

    d. Manufacturing, designing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling the Accused Products or any other products that bear an identical or confusingly similar design as Coach's Rogue Trade Dress and Soho Flap Trade Dress;

    e. Engaging in any other activity constituting unfair competition with Plaintiffs, or acts and practices that deceive consumers, the public, and/or trade,

including without limitation, the use of designations or designs associated with the Coach brand;

77. Ordering Defendants to recall from any distributors and retailers and to deliver to Plaintiffs for destruction or other disposition all remaining inventory of all Accused Products and related items, including all advertisements, promotional and marketing materials therefore, as well as means of making same;

78. Ordering Defendants to file with this Court and serve on Plaintiffs within thirty (30) days after entry of the injunction a report in writing, under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

79. Directing such other relief as the Court may deem appropriate to prevent consumers, the public, and/or the trade from deriving any erroneous impression that any product at issue in this action that has been manufactured, designed, imported, advertised, marketed, promoted, supplied, distributed, offered for sale, or sold by Defendants, has been authorized by Plaintiffs, or is related in any way related to, connected to, or affiliated with the Coach brand;

80. Ordering an accounting by Defendants of all gains, profits and advantages derived from their wrongful acts;

81. Awarding Plaintiffs all of Defendants' profits and all damages sustained by Plaintiffs as a result of Defendants' wrongful acts, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

82. Awarding Plaintiffs actual and punitive damages to which they are entitled under applicable federal and state laws;

83. Awarding treble damages in the amount of Defendants' profits or Plaintiffs' damages, whichever is greater, for willful infringement pursuant to 15 U.S.C. § 1117(b);

84. Awarding applicable interest, costs, disbursements and attorneys' fees;

85. Awarding Plaintiffs such additional and further relief as the Court deems just and proper.

Dated: April 4, 2025

BLAKELY LAW GROUP

By: */s/ Tara A. Currie*
Brent H. Blakely
Tara A. Currie
***Attorneys for Plaintiffs
Tapestry, Inc. Coach Services, Inc.,
and Coach IP Holdings LLC***

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

# DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs Tapestry, Inc., Coach Services, Inc., and Coach IP Holdings LLC hereby demand a trial by jury as to all claims in this litigation.

Dated:  April 4, 2025

BLAKELY LAW GROUP

By:  */s/ Tara A. Currie*
Brent H. Blakely
Tara A. Currie
**Attorneys for Plaintiffs**
*Tapestry, Inc. Coach Services, Inc., and Coach IP Holdings LLC*